and Vegetables, and two of its principles, under the provisions of the False Claims Act. Now, you only escape tariffs and duties by invoking no jurisdiction at both the Ninth Circuit and the CIT. How do you prevail? Well, Your Honor, first of all, I wasn't... What gives you a right to fees when you just succeed in saying no jurisdiction? Well, may I add to that, was there a federal court where there was jurisdiction over these claims? I believe it was the Court of International Trade, because the Court of International Trade... But that's not what you argued before the court. Oh, that's not true, Your Honor. Before the Court of International Trade, when this case was transferred from the Ninth Circuit, there was a plausibility hearing held. And we filed briefs saying that, yes, there was plausible jurisdiction in the Court of International Trade, at least to the extent that this lawsuit sought to recover customs duties. Now, with respect to amounts in excess of customs duties, the troubled damages, as it were, we didn't take a firm position. We said that there's no clear, specific jurisdictional statute as to the troubled damages. However, the Court of International Trade has, from time to time, exercised ancillary or pending jurisdiction over claims that it might not have had original jurisdiction over when they were attached to claims where jurisdiction was found. So the question here is whether this was a case to collect customs duties, among other things. But the point is, the only court that really looked at the merits of this case said, you lose. Well, and that was before my involvement in the case, but that judgment was vacated. I understand that, for lack of jurisdiction. It doesn't count. I understand that, but I'm trying to figure out how you win when the only consideration of merits that we have didn't go your way. Well, no, Your Honor. I disagree, because I believe, respectfully disagree, because the judge Well, which court considered the merits and said you win? Well, yes. As to the duty claim, and specifically, Judge Harmon said in his decision, which dismissed the government's claim under the False Claims Act, he said, this court finds the plain reading of the FCA, the False Claims Act, does not provide for the recovery of any duties, customs, or otherwise. Now, that, Your Honor, is an interpretation of the substance and the merits of the False Claims Act. No, that was made in the context of the jurisdictional issue before the court. Well, Your Honor, what happened in this case is that because the court found, through that analysis, that it had no jurisdiction over the case. Well, the court followed that statement by saying it had no jurisdiction. But, Your Honor, what we believe is that the Court of International Trade improperly conflated the question of the merits with the question of jurisdiction. Section 582.3 of the court's jurisdictional statute gives the court exclusive jurisdiction over all actions commenced by the government to collect a customs duty. Now, this action sought, among other things, $644,000 in customs duties. They calculated that amount by applying an anti-dumping duty rate to the entered value of four specific entries of merchandise by my clients. There is no question that when the government brings a suit to collect customs duties, the CIT has subject matter jurisdiction. Now, that does not necessarily mean that the government's suit has merit, but it certainly means that the Court of International Trade has jurisdiction. But you didn't appeal that. You didn't attempt to get that sorted out. You were happy the case was dismissed. Well, I was happy, but, again, under this court's decision in Hudson v. Principi, one can hardly be expected to appeal from a decision that goes in one's favor, even when the tribunal that dismisses the thing perhaps mistakenly says that it doesn't have subject matter jurisdiction. But why would we appeal a decision that favors us? I certainly understand, but you certainly can't now contend that because the court dismissed the case, that it should have really stated it had jurisdiction and determined the case on the merits. And since that's what the court should have done, then we're entitled in Egypt recovery because we prevailed. Well, what we are suggesting, Your Honor, is that what this court needs to do is to look at Judge Carman's decision and determine whether, in fact, he correctly held, I lack subject matter jurisdiction. What we believe is that what he actually held is that the False Claims Act does not provide an action for the recovery of duties, meaning that the government's charge against us must be dismissed, as we had urged, not on jurisdictional grounds. See, we didn't move to dismiss this case for lack of jurisdiction. We moved to dismiss this case for failure to state a claim on which relief could be granted. You see, our position is that only the Tariff Act provides for the collection of duties. The False Claims Act doesn't provide for the collection of duties. The fact of the matter is that if the government brings action against somebody saying you owe me customs duties, it doesn't matter whether they say you owe them pursuant to the Tariff Act or the False Claims Act. Where in Judge Carman's opinion does he evaluate whether the False Claims Act applies to your facts? Well, there's no question that the case was brought under the False Claims Act, but in his opinion... But where does he evaluate that? Well, he evaluates it. We cite it in the blue brief on page 11. He says that the court now turns to the stated claim of available relief under the FCA. And he says the relief grant is for damages and civil penalties with no reference to duties. In paragraph following that, we put in bold, I think, what constitutes the core of Judge Carman's decision on the merits. He finds that the False Claims Act does not support an action to recover customs duties. Now that's an important substantive interpretation of the False Claims Act. We know from the act itself it doesn't involve actions for internal revenue taxes under the code. But in this case, what the court's saying is he's unconstruing the False Claims Act. It does not give the government the right to collect duties. And he is the only one who has jurisdiction to make that determination. If the government brought an action against an importer saying, we have a right to collect duties under the Social Security Act or add common law, those actions might have no merit whatsoever. Those laws or those doctrines might provide no avenue for the recovery of duties. But the fact is, Congress has said in section 1583, that the Court of International Trade is the exclusive forum for deciding that question. It's the exclusive forum for the government to bring a case to collect duty. Now in this case, the government tried to collect duty from our client under a statute which the CIT said does not provide for the collection of duties. But Judge Carman went on to say, he said he cannot reach the substantive motions before it. He said he lacks the statutory authority to grant you your request of relief. He's not vested with the authority to grant plaintiffs claims for damages and penalties pursuant to the FCA. He's not getting to the issues at all. No, he granted my claim for relief. I mean, he dismissed the case. What he said he could not reach was he could not reach the government's claims for the troubled damages. Let me refer you to something that Judge Carman said in the case that is now appealed, the case on Egypt. Yes. After referring to the statute that says Egypt is only applicable in any court having jurisdiction of that action, Judge Carman, who probably is the best person at interpreting the previous decision he wrote, said, quote, this court determined that it lacked jurisdiction over the underlying suit against defendants. Where in that statement do you see a decision on the merits? Well, I believe that the judge misconstrued the basis for his prior decision. So he didn't understand what he had done before. Well, what he had done before was he had conflated the merits with subject matter jurisdiction. And the Supreme Court in the Steelco case, which is mentioned in our brief, says if you do that, then you're going to ultimately conclude that every action you dismiss on the merits is dismissed for jurisdictional purposes. The ability to satisfy the requirements for recovery on the underlying statute is not an element of the court's jurisdiction. So the fact of the matter is the government brought a baseless claim under the False Claims Act. The court held on reading the False Claims Act. He construed the False Claims Act. He says it gives no right for the recovery of duties. And he dismissed the government's action insofar as it sought duties on that ground. That's a determination on the merits. And the error that Judge Carman committed and repeated is the error that the Supreme Court guarded against in the Steelco case. Now, the final point mentioned in our brief would be that even if this court were to conclude that it was a dismissal for lack of subject matter jurisdiction, Hudson versus Principe suggests that it doesn't automatically mean that one can't be a prevailing party for EIJA if you want to avoid manifest injustice. And in this case, our clients were hounded for over a decade, charged under a statute that didn't provide a right to charge them. And they were denied various procedural and substantive protections under Section 592 of the Parapract. Even if the court were to conclude that Judge Carman was dismissed for jurisdiction, we would still be deemed a prevailing party. And I'll do my best. You want to save the rest of your rebuttal, huh? I will reserve for rebuttal. Thank you. Mr. McNamara? May it please the Court. Judge Carman himself, in footnote 5 in his EIJA decision, said that, and I quote, this court made no determination on the merits of the government's Reverse False Claims Act complaint. The underlying decision here was clearly jurisdictional. And Universal Fruits reads that decision, distorts that decision immensely to say that it was a dismissal for failure to state a claim. I'm kind of interested in the government's litigation strategy. Did the government simply fail to act for five years? Or did it actually make a decision that let's swing for the fences and go for a False Claims Act, because then we can get trouble damages and really socket to these custom duties cases in the future if we get the right precedent? What's going on here? I'm not sure exactly why. Were you swinging for the fences or were you just made a mistake? I'm not sure whether it was a mistake or whether it was deliberate. I do certainly know that the five-year statute of limitations imposed by the Tariff Act had elapsed by the time we brought this suit in. I understand. So that could have been just a mistake, or it could have been setting up this test case where you can use the False Claims Act, trouble damages, and boy, it really changed the whole face of the law in this area. It could have been either way, and it would have been perfectly appropriate for us to do that if that's what we were doing. I honestly just don't know why we did it, but if we did… But if, see, it's the latter, then I start to think maybe he did win. Maybe he won something. If he frustrated a strategy that, even if it was on jurisdictional grounds and thus avoided trouble damages and all the implications of it, it begins to look a little different, doesn't it? Well, before you get that issue concerned, whether or not universal fruits is a prevalent part of here, that issue is not actually before the court. Universal fruits has to get through the predicate in Egypt that the court must have had jurisdiction over the underlying action. And they don't meet that test, so we don't even reach the issue of whether universal fruits is a prevalent part. There's a circuit split about whether, if a case is dismissed for lack of jurisdiction, a party has prevailed or not. This court said in a footnote, I think, to the Burkhart case that it's doubtful that when a case is dismissed for lack of jurisdiction that a party is prevailing. All of that said, whether universal fruits here prevail or not, they certainly – the case was dismissed. It went away. That's absolutely the case. But Congress has made it very clear, and this court has said in Burkhart v. Gover, that the jurisdictional language in Egypt is clear and plain and unambiguous, and there's no exception to that jurisdictional language. Respond to the argument that there was manifest injustice here. In principle, he refers to that as an exception. Is there an injustice when a person has to undergo almost two million, perhaps more than two million dollars of expense to fight off the government? Well, a couple of things. The universal fruits, each application was for less than $200,000, and that was not for anything close to $2 million worth of expenses. But it could have been held responsible for two million based on the district court of Los Angeles. Yes, that's true. The Hudson case is distinguishable. Both parties, the government and the plaintiff, agreed that the Veterans Court got it wrong on the jurisdictional issue. The Veterans Court in Hudson remanded the case but said it was dismissing for lack of jurisdiction. Everyone conceded that that was wrong. That's totally – that's not what happened here. We don't concede that the court of international trade got the jurisdictional decision. But you didn't appeal it. We did not appeal it. That's correct. We don't concede that it was wrong. We elected not to appeal. That's our position on the jurisdictional holding. We don't challenge it. And so that distinguishes this case from Hudson where there was clearly an erroneous jurisdictional holding by the Veterans Court. As far as manifesting justice, I'm not sure that it's really an appropriate analysis for the jurisdictional question. But looking – if we have to look at substantial justification, which requires us to look at the merits of the case as a whole, as Judge Harmon himself, as the trade court pointed out here – By the way, there's an additional factor, isn't there? You docketed appeal and then withdrew it. That's correct. We solicited a general. So maybe your position isn't quite as confident as you suggested a moment ago. Well, the solicitor general elected not to appeal. We docketed a protective notice of appeal, and the solicitor general told us not to. And he's the one that makes the decision, so that's our position. As far as the overall manifested justice in this case, as the trade court here noted, the only court ever to consider this case on the merits found that Universal Fruits had defrauded the United States $650,000 in penalties, which under the False Plaintiff Act would be trebled and added up to more than $200,000. So from a larger perspective, is this fair or not? Universal Fruits walked away here. They escaped. They survived. There's nothing unfair from a larger perspective about now requiring them to pay attorney's fees. And that's consistent with the overall IJIA idea that this court expressed in the Gavette case, that IJIA does not automatically require that fees be shifted. And also, just to talk about the Steele Co. case for a moment, in Steele Co., the Supreme Court reiterated the proposition established in ex parte micardo of an ancient proposition that when a court lacks jurisdiction, the only thing the court can do is dismiss the case. That proposition is entirely consistent with what the trade court did here with this IJIA application. It didn't have jurisdiction over the merits of the case. It had to dismiss the IJIA application. That's consistent with Steele Co. and, of course, with the plain language of the statute. This is a momentous moment. I never thought I'd hear McCardle cited in one of my arguments. The old habeas corpus case out of the Civil War. Please don't ask me to recite the facts. I'm reciting them for you. It's the habeas corpus case out of the Civil War. I would like to say that this case is also distinct. The Universal First does not cite it, but the one case that sort of provides an opening for getting around the plain language of IJIA is the 87th Skyline Terrace case in the Ninth Circuit, which in some ways looks like this case. The government brought a suit that was then dismissed for lack of jurisdiction because it failed to obtain requisite approval from the Secretary of the Treasury, and the defendants then moved for fees under IJIA. The court said well. The Ninth Circuit said well. There was no jurisdiction, but that was because the government failed to get this approval from the Treasury Secretary. The district court really had potential jurisdiction, and so it awarded IJIA fees was appropriate because the district court could have had jurisdiction. That case is the most analogous to this one. This court soundly rejected that reasoning in the Burkhart case and found that there was no such thing as potential jurisdiction, that the statute requires plainly that the trial court have jurisdiction of that action, the action that is before it. So the only potential avenue here for, the only potential avenue that we've seen for defendants for universal proofs to get around the plain language of IJIA is this 87th Skyline Terrace case, which this court has already rejected in Burkhart. And then just one final thought. Because for the court to determine whether the government's position is substantially justified, it has to go back and look at the merits of the case. And so in this case, if the trade court cannot consider whether universal proofs violated the False Claims Act, it certainly can't consider whether the government's position was substantially justified. That makes perfect sense. As the Burkhart, as this court pointed out in Burkhart, that makes perfect sense in the overall scheme of IJIA, which of course is strictly construed because it's a waiver of sovereign immunity. If this court were to reverse, what would be the instructions, if any, to the Court of International Trade? Well, if this court were to reverse and say, it would depend on why the court was reversing. If this court were to reverse and say that the Court of International Trade did in fact possess jurisdiction over the underlying action, well, if that were the case, it would certainly be appropriate for the government to have a chance to prove its case. And so if the court were to do that, we would ask that the court remit with instructions to reopen the underlying suit, because it's certainly not fair for universal proofs to get its shot at attorney's fees, and we can't have our own chance to prove the merits of the case. Might this court simply reverse and say, Judge Carman, to the court, you have not considered possible exceptions to the requirement that your court have had jurisdiction to consider IJIA? If this court were to, this court could theoretically remand and say that the plain language of IJIA, the jurisdictional requirement, was somehow not applicable. Does not block all possibilities for IJIA. Yeah, yeah. If that were to happen, then we would ask that the case be remanded for determination of whether the universal proofs is a prevailing party, whether the government's position was substantially justified, and whether any special circumstances, the third prong of IJIA, would prevent them from working. Those would involve determinations on the facts of the underlying case that this court should not be the first one to determine. Absolutely. We did not brief them before this court. We briefed them before the trade court, and we can certainly go back and do that, and we'll probably win, because our position, this is just bluster, but our position was substantially justified. Our confidence. But again, well, those issues were not briefed here. And so that would be, if this court were to improperly remand, that would be a proper way to do it. Again, it would be— Interesting phraseology. Again, we rely upon the plain language of IJIA and assert that that would prevent such a remand. All right. Thank you, Mr. McNamara. Thank you. Mr. Peterson, you have about four minutes left. Your Honor, if I could first speak to Judge Moley's question. I at a loss to understand how, if this court reverses and sends this back to the CIT, you can instruct the CIT to reopen this case and allow the government to put on its proof. The government appealed for the dismissal of its case and then dropped the appeal. I mean, that is over. The only question to remand here is whether we were the prevailing parties and whether we should have our equal access to justice act fees. I do appreciate, though, the government's attempt to swing for the fences on that one. But again, something Judge Rader said, speaking of swinging for the fences, the government has been completely unwilling since this case started to say to this or any other court what its reasons were for proceeding under the False Claims Act instead of proceeding under the Tariff Act. And by proceeding under the False Claims Act, they did some serious things that put our clients in a lot of peril that they should not have been putting. I mentioned before that the duties collected at issue were $644,000. That was at a 300-plus percent rate of duty. The actual value of the merchandise involved in the claimed violations was less than $200,000. Now, if the government had proceeded under the Tariff Act, which would give it a right to try to get withheld duties, the limitation of our client's liability would have been the withheld duties plus the $190,000 value of the merchandise. But they didn't do that. And they have five years to bring that case, five years from their discovery of the alleged violation here. They didn't do that. Instead, they go into the False Claims Act and try to expose our clients to $2 million in liability. Now, they also deprive our clients of a bunch of other substantive rights that Congress legislated under Section 592. There's the five-year statute of limitations. There's statutory maximum on the assessment of the penalty, which I mentioned here is about one-tenth of the extra amount the government was going for. The right to culpability determinations. Did they know about determination of things in the Court of International Trade on a trial record? Did they try to avoid the court? We didn't get administrative notices of the claims. We didn't get the right to petition. We didn't get the right to seek mitigation administratively. So I think the government really was swinging for the fences here. This is quite an unusual case. Even if the court were to conclude that Judge Parman was correct when he said he lacked subject matter jurisdiction on the case, under the Hudson v. Principi rule, I think there would still be ample reason to remand this and say to the judge, these folks are prevalent parties. They really did prevent the whole customs law area here from being turned topsy-turvy. But we also think that there's still room to find that Judge Ayer in saying that his decision was based on jurisdiction, not on merits. I mean, at some point, I don't know what part had jurisdiction over this case. But to the extent the government was looking for duties, and that $644,000 is nothing if not a duty calculation, the Court of International Trade is the place to go. The Ninth Circuit recognized that and transferred it there. One other point. If the court had determined that there was no subject matter jurisdiction in the CIT, why did it not retransfer the case to the Ninth Circuit? It simply dismissed it, which we suggest supports the inference that they found, hey, the False Claims Act just won't let you support this case here in the CIT or in any other court. There was one prior False Claims Act case in the CIT, U.S. X. Rel. Felton v. Allslex, where the court said we don't have subject matter jurisdiction because it was a quitan action. In that case, the court retransferred. It didn't dismiss it. Judge Harman did not retransfer here. He dismissed it. We think he made a decision on this case. But you're saying he would retransfer to the Ninth Circuit and essentially telling the Ninth Circuit your decision is incorrect. Well, he could have retransferred if he decides that there's no plausibility, there's no jurisdiction. That's what usually happens in these cases. And then it's up to the circuit court to decide what to do. But that wasn't done here. He dismissed it. The government didn't ask for it to be retransferred. The government never appealed for the Ninth Circuit's decision. The government appealed for the dismissal of its claim here and dropped the appeal. So we think there's a final decision on the merits here, and that it was that the False Claims Act just didn't allow the government to do what it was trying to do here. Thank you, Mr. Peterson. All rise.